Dowling *v.* The State, 5 Smedes & Marshall, 664.

### Murder.

Where, in organizing the grand jury, a sufficient number is not obtained before the regular *venire* is exhausted, it is not error to complete the necessary number from by-standers summoned by the sheriff under the authority of the court.

Sharkey, C. J., *dissenting.*

Whether objections to the personal qualifications of grand jurors, or to the legality of the returns, can affect indictments found by them, after such indictments have been received by the court and filed. *Query.*

Where a sufficient number of the regular *venire* did not attend to form the grand jury, and the deficiency was supplied from by-standers, summoned by the sheriff by order of the court, and it does not appear by the record that they had the requisite qualifications, the law will presume, until the contrary is made to appear, that they had.

The statute (How. & Hutch. 674, sec. 46,) which limits the number of peremptory challenges in capital cases, on the part of the prisoner, to twelve, is not an infringement of that clause of the constitution which provides, "that the right of trial by jury shall remain inviolate."

"Trial by jury" means a trial by twelve free and lawful men, of kin to neither party, for the purpose of establishing, by their verdict, the truth of the matter in issue between the parties; and legislation which merely regulates the mode of attaining this object, and does not take from it any of its essential attributes, will not be considered as infringing on that right.

D being indicted for the murder of a slave, and it being proved that D was acting in the capacity of overseer for B, a witness on the part of the state was permitted, although objected to by the prisoner's counsel, to testify as to the prisoner's general habit, as overseer, in punishing slaves upon the plantation of the owner of the slave killed; *held,* by the court, that such evidence was inadmissible, being calculated to prejudice the jury against the prisoner, and not being responsive to any charge in the indictment.

Error to the circuit court of Warren county.

Caption of the record.

"State of Mississippi. Pleas before, etc., at a circuit court held in and for Warren county, at the court-house, on 24th May, 1845. Be it remembered, that at a circuit court begun, etc., on 21st Oct., 1844, a grand jury of inquest for the body of this county was empanelled, viz: John G. Parham, (and nine others,) of the regular *venire,* which being exhausted, the following persons, by-standers, were summoned by the sheriff, viz: Robt. L. Matthews and Thos. Rigley. The court thereupon appointed John G. Parham foreman; said grand jury were then sworn according to law, and having received their charge, retired," etc. On 30th October, 1844, the grand jury, thus constituted, returned into the court an indictment against the accused for murder, "a true bill."

The indictment charges the prisoner with having, in August,

1844, "in and upon one Dick Smith, a negro man (slave of one R. C. Ballard), in the peace, etc., feloniously, wilfully, and of his malice aforethought, made an assault, and that the said Thos. Dowling, with both his hands and feet, the said Dick Smith, negro, etc., as aforesaid, to and against the ground, then and there, feloniously, wilfully, and of his malice aforethought, did cast and throw; and that said Thos. Dowling, with a certain wooden paddle" inflicted divers mortal blows, etc., of which, on the 6th day of September, he died; and so the grand jury pronounced him guilty of murder.

At April term, 1845, a special *venire facias* for fifty men was ordered, and out of them a jury was empanelled. In organizing this jury, Dowling having peremptorily challenged twelve of the panel, further peremptorily challenged E. Grammar, tendered him by the state. This was objected to by the state, and the objection sustained, and Grammar received and sworn as one of the jury, to which exception was taken and filed.

On the trial Puckett, a witness on the part of the state, was asked by the state, "Did the accused ever tell you what was his usual and general habit of punishing slaves on Ballard's plantation?" Objected to, but the court overruled it and permitted the answer, "that prisoner told him his usual habit was to punish slaves with a paddle," which the witness stated was a piece of white oak timber about two and a half inches thick and as broad as his hand. To this question and answer, exceptions were taken and filed.

Another bill of exceptions recites, "that the only proof offered to the jury that the slave Dick Smith was the property of R. C. Ballard, was the testimony of one Dickson, on the part of the state, who, to the question by the state, "Do you know the slave Dick Smith, the property of R. C. Ballard?" replied, "yes;" and the proof that Dick Smith was on the plantation of R. C. Ballard at the time of the alleged beating and wounding, and had been there for several months previous; and had been attended to in his last illness on the plantation, and had died there. The verdict is as follows: "The said Thomas Dowling is not guilty of murder as he stands indicted, but is guilty of manslaughter in the second degree."

Motions for new trial and in arrest of judgment, because 1st. The court had permitted Grammar to be sworn upon the jury. 2d. Because the testimony of Puckett was improperly admitted. 3d. Because the grand jury was not empanelled according to law. 4th. Because the petit jury was not organized according to law. These motions were both overruled and exceptions taken.

*John I. Guion* and *S. C. Cox* for plaintiff in error.

Insisted upon the following errors, to wit:

1st. The grand jury was not organized and empanelled according to law; the grand jury could be selected from the original panel or *venire* only; the court had no power to summons bystanders and add them to the ten persons of the original *venire* in attendance, for the purpose of forming a grand jury. How. & Hutch., p. 490, sec. 44, 45; ib., 492, sec 49; Byrd v. The State, 1 How., 163. The statute provides, that "if none of the regular jurors summoned to such term attend, the court shall forthwith award a special *venire* to bring a sufficient number, etc., to serve as jurors at such term of the court." How. & Hutch., 498, sec. 66. If any one of the grand jury who returned the indictment into court, was not possessed of the legal qualifications of a juror, the indictment was void. 1 Chitty's Cr. Law, 307; 4 Bacon's Ab., title juries, 525; The State v. Bennett, Mart. & Yerger, 135; The State v. Duncan & Trott, 7 Yerger, 271; Byrd v. The State, 1 How., 163. The two bystanders placed upon the grand jury, may or may not have possessed the legal qualifications. On a failure of a sufficient number of the regular *venire*, it was the duty of the court to bring them in by compulsory process. 4 Bacon, title juries, 528; 2 Hale P. C., 265; 2 Hawk., 565.

2d. The second error assigned, and upon which a new trial should have been granted is, that the court restricted the number of peremptory challenges to twelve. The act of 1836, How. & Hutch., 674, reducing the number of such challenges to twelve, deprives the accused in a capital case of a most valuable and important constitutional right, and is, therefore, void. The constitution of the United States guarantees to every citizen a speedy public trial by an impartial jury. The constitution of

this state declares, that " the right of trial by jury shall remain inviolate." Declaration of Right, sec. 28. By the common law, a party accused of a capital crime, was entitled to challenging peremptorily thirty-five of the regular panel. Bacon Ab., title juries, 569 ; 2 Hale P. C., 268 ; 2 Hawk. P. C., ch. 43, sec. 5. This number was reduced to twenty by the statutes of England ; except in treason and misprisions of treason. Thus stood the right of trial by jury in England, at the time of the adoption of the federal constitution. The constitution of this state, when admitted into the Union, and that of 1833, both guarantee to the citizen the right of trial by jury, and which for many years remained unimpaired ; and the court, in the case of The State v. Byrd, 1 How., 163, clearly recognized the right of trial by jury as it existed at the time of the adoption of the constitution. At that time one of the most important incidents of the trial by jury, in capital cases, was the right to challenging peremptorily twenty of the panel.

3d. The third error is, that the court permitted proof of the general habit of the accused in punishing slaves on the Ballard plantation, to go to the jury for the purpose of establishing his guilt in this particular case. This was a violation of the well-known rules of evidence. The general rule is, that every species of evidence should be rejected which is foreign to the point in issue, and should be more rigidly enforced in criminal than in civil cases. 1 Phillips Ev., 178 ; Greenl. Ev., 61, 62. The character of the accused, as a cruel overseer, was not in issue. On such trials it is not permissible to show even that accused has a general disposition to commit this sort of crime. 1 Phil. Ev., 181. The general character of one accused of crime, cannot be given in evidence to establish his guilt. Greenl. Ev., 61, 62. For this error the court ought to have granted a new trial. Roscoe's Cr. Ev., 57, note 1. Cruelty to slaves is a distinct offense, for which the accused was indictable. Norris's Peake, 13, 14 ; Bul. Nisi Prius, 296 ; Rosc. Ev., 89 ; 2 Mass. Rep., 317 ; 7 How., 631 ; Cow. & Hill's Notes, 459.

4th. The fourth error assigned is, that there was not sufficient proof before the jury, that Dick Smith, the deceased, was a slave or the property of R. C. Ballard. Every material aver-

ment in the indictment must be established by legal and suffi-
cient evidence. The averment, that Dick Smith was a slave
and the property of Ballard, we contend, were material aver-
ments. An averment in an indictment, although unnecessary,
yet if it be pertinent to the point in issue, must be proved;
and greater strictness will be required in the proof in crimi-
nal than in civil cases. Rosc. Cr. Ev., 86; United States v.
Porter, 3 Days' Cases, 283. Descriptive averments must be
proved as laid. Rosc. Cr. Ev., 78, 82. This fact, as laid, was
not sufficiently proved to authorize the verdict rendered by
the jury.

*Sanders & Price,* on same side.

The errors relied on question the correctness of the finding
of the jury; the refusing of the peremptory challenge of juror
Grammar; the admission of Puckett's testimony; the refusal
of a new trial; and the overruling of the motion in arrest of
judgment. The finding of the jury is defective and erroneous.
Under our constitution, which gives the accused the right " to
demand the nature and the cause of the accusation," and ex-
empts him from arrest or detention, except in cases ascertained
by law; and which prescribes a different punishment for man-
slaughter, dividing it into different degrees, the right of the
jury to find the accused guilty of any other offense than that
directly charged, is prohibited. In England, murder and man-
slaughter were alike punishable with death; here they are not;
and the reason of the rule not existing here, the rule itself
ceases. The finding of the jury, " but guilty of manslaughter
in the second degree," without other qualification connecting
it with the person killed, is too general, and ought not to be
sustained.

It was error to admit the testimony of W. R. Puckett. A
detail of a conversation with the accused, touching his usual or
general habit of punishing slaves on the Ballard plantation, was
clearly irrelevant, foreign to the issue, and calculated to excite a
prejudice in the minds of the jury towards the prisoner. Chit-
ty's Crim. Law., 564; see also, Ib., 573, 575; but *Nisi Prius*;
Hawkins b. 2 c., 46, § 206. The declarations of a party, crim-
inally prosecuted, are received with great caution, even when

pertinent. Chitty's Crim. Law, 571. Also, Buller on trials, 294; 1 Chitty's Crim. Law, 556, 557, and authorities there cited.

The court erred in refusing a new trial on the ground of denying the prisoner his peremptory challenge to the juror, Grammar. The constitution declares that, "the right of trial by jury shall remain inviolate." Art. 1, § 28. At common law, in capital cases, the prisoner could challenge thirty-five peremptorily. The English statutes reduced this number to twenty, in capital cases, except in treason and misprision of treason. The right of trial as thus regulated, was guaranteed by our constitution of 1832, 3 Bacon's Ab., title juries, 263 and 264; How. & Hutch., 667, § 17. Thus it is manifest, that at the time of the adoption of the constitution, by the common law, the right to challenge twenty jurors peremptorily in capital cases, existed. This common law right was guaranteed by the constitution, and the legislature has no power to change or impair it. See Byrd v. The State, 1 How., 163.

Lastly, we insist the circuit court erred in refusing to arrest the judgment, as well upon the particular finding of the jury, as for the defect in the indictment, and especially in the caption. It is the office of the caption of an indictment to state with sufficient certainty, not only the style of the court, the judge then presiding, but the time and place, when and where it was found, and the grand jurors by whom it was found. Thomas v. The State, 5 How. 20–32.

*G. Baker*, on same side.

1st. In order to effect a regular conviction, all the requirements of law, applicable to the case, should be strictly observed in the court below.

2d. The record should show, and it is presumed does show, every thing material which transpired during the progress of a cause to its final result.

3d. This court will presume that the circuit court kept a true and faithful record of its acts, and that the transcript of the record, certified to this court is correct.

4th. That, if the record fails to show that every thing material to a regular conviction has been observed in the court below,

or if it shows error in the ruling of the court in any material matter, then this court will pronounce the conviction irregular, and will reverse the judgment of the court.

The errors which will be noticed are,

1st. The grand jury, by whom the indictment purports to have been found, was not summoned or organized according to law. The statute provides that the clerk and sheriff shall draw the names of the requisite number of jurors, and that the names so drawn shall be entered on the minutes of the court, and a *venire facias* to issue, etc., and that the sheriff shall summon them at least five days before the return, and make due return of the same. H. & H., 492, § 48, 49. From this number so drawn and summoned, the grand jury shall be drawn by lot. To organize a grand jury legally and regularly, all these acts should have been performed substantially as required by the statute; this, it is insisted, was not done; inasmuch as the record is silent upon the matter. Where the existence of a fact *should* appear by the record, but does not so appear, the legal presumption is that it did not take place.

These principles have been recognized by this court in the case of Thomas v. The State, 5 How., 32. "In cases highly penal no court is authorized to put the humblest citizen upon his trial, until the grand jury of the proper county, organized as the law directs, has preferred a formal accusation against him." There is nothing in the record to show that the grand jurors were drawn by lot, or indeed, how they were drawn. The record, after the caption and term, simply states that, "A grand jury of inquest, etc., was empanelled, viz: John G. Parham, etc., of the regular *venire* to the number of ten, which *venire* being exhausted, the following persons, by-standers, were summoned, to wit; R. L. Matthews, etc." This is all that the record shows relative to the organization of the grand jury. The record does not show "a grand jury of the proper county, organized as the law directs," as defined by the court in the above case.

2d. Although the record shows an *order* of the court for a special *venire* of fifty men, as traverse jurors, yet no such *venire* appears by the record to have been issued by the clerk, or re-

turned by the sheriff; nor does it appear by what authority the jurors were brought into court. The statute (How. & Hutch. 673, § 45,) makes it the duty of the court, where any person is charged with felony, the punishment of which is death, to award a special *venire*, etc., commanding the sheriff to summon, etc., any number, etc.," requiring them to attend on a particular day, to be mentioned in said *venire*, etc. The record does not show the issuance or return of any such process. It has been decided by the supreme court of New York, whose statute upon this subject is very similar to our own, that in a capital felony, a special *venire facias* is necessary to authorize the summoning of a petit jury to try the case, and that if the record does not *show* that one has been issued, and duly served and returned, the judgment will be reversed. The People v. McKay, 18 Joshus. 212. See also, 2 Hawk. P. C., look 2 ch. 41, sec. 1 ; 2 Hale's P. C., 260, 261; 1 Chit. Crim. Law, 505. The record should show all necessary facts, otherwise it will be presumed the court below proceeded without proper authority. Carpenter v. The State, 4 How. 168.

3d. The court erred in permitting testimony to be given to the jury as to defendant's usual mode of punishing slaves on the Ballard plantation. The testimony of Puckett had not the most remote tendency to prove the issue between the state and the defendant ; but it had a tendency to create an unfavorable impression on the minds of the jury towards the prisoner, and was therefore improper, and should not have been admitted.

4th. The evidence adduced to prove the slave, Dick Smith, charged to have been killed, was the property of R. C. Ballard, as charged in the indictment, was not sufficient to authorize the verdict of guilty ; and therefore the court erred in refusing a new trial. There were but two witnesses who testified as to the matter of ownership. Dickson, to the question by the state " Do you know the slave, Dick Smith, the property of Rice C. Ballard ?" answered " Yes ; and that at the time of the alleged beating, etc., the said Dick was on the plantation of said Ballard." This answer proves two things, and nothing more, viz., witness knew Dick Smith, and that at the time of the beating, etc., charged, he was on the plantation of R. C.

Ballard. He does not say that he knew the boy to be the property of Ballard, nor was the question put to him. Again, the testimony of Puckett had not the remotest tendency to prove ownership in Ballard. Witness says he heard the testimony of witness, Dickson, that he knew the boy, Dick Smith, spoken of by Dickson, and that he had visited him during his last illness on the plantation of Ballard, and had administered medicine to him there. The assumption by the district attorney, of ownership in Ballard, is no evidence of the fact, and there is, therefore, no proof of property to support the allegation in the indictment.

8th. The court erred in overruling the motion in arrest of judgment, it appearing that there was no prosecutor marked on the indictment. The statute, in explicit terms, requires this. Cody v. The State, 3 How., 27; Peter (a slave) v. The State, 3 How. 434.

*John D. Freeman*, attorney general.

Error 1st. In drawing the grand jury, the *venire* was exhausted, and two talesmen were summoned and put upon the jury. The statute provides that talesmen may be empanelled as grand jurors, and that they shall serve until discharged by the court. H. & H., 499.

The common law affords the same rule in cases where the *venire* was exhausted before the grand jury was complete. It is a discretionary power of all courts of general criminal jurisdiction, without which designing persons summoned on the *venire*, by refusing to attend court, might prevent the formation of a grand jury at every term of the court, and so defeat the ends of justice. Huling v. The State, How., 6.

The issuance of an attachment for contempt by failure of a juror to attend, is discretionary with the court, and if not resorted to is no cause of error.

2d. The law reducing the peremptory challenges from twenty to twelve is unconstitutional. The constitution secures the right of trial by jury. The number and qualification of jurors has ever been the subject of legislation under *Magna Charta* in England, and under the constitution of the United States. The statute of this state now brought in question, was decided to be constitutional by Mr. Justice Trotter. 4 How. 196, 197. The

points made in the bill of exceptions are submitted without comment.

THACHER, J.:

This was an indictment for murder preferred in the Warren county circuit court, which resulted, upon a trial, in a verdict of manslaughter in the second degree.

The first ground claimed for error is, that the grand jury which found the indictment was composed in part of by-standers, of which ten persons were taken from the regular *venire*, and it having then become exhausted, two persons were taken from by-standers summoned by the sheriff.

It has been held that objections to the personal qualifications of grand jurors, or to the legality of the returns, cannot affect any indictments found by them after they have been received and filed by the court; but such objections, if any exist, must be made before the indictments are found, and may be received from any person who is under a presentment for any crime whatsoever, or from any person present who may make the suggestion as *amicus curiæ.* Commonwealth v. Smith, 9 Mass., 107. But assuming that this objection is well taken in point of time in this case, it is not clear that it is well taken in point of fact.

The first inquiry which grows out of this assignment of error is, the legality of completing a grand jury by means of tales grand jurors, in cases of an exhaustion of the jurors returned upon the regular *venire facias.*

The constitution of this state has provided that " the right of trial by jury shall remain inviolate ;" and it has further provided, that " before an individual shall be held to answer for a capital, or otherwise infamous crime, except in cases not now pertinent to enumerate, there must be a presentment or indictment for such crime by a grand jury." It is contended that, by thus adopting modes of legal proceedings, we have adopted them with all their incidents, as known to the common law, or, at least, so far as not changed by absolute legislation. The history of this country, and the opinions of some of its most eminent jurists, show that this position, when generally claimed, must be taken with restrictions.

Mr. Justice Story in his Commentaries on the Constitution, vol. 1, p. 132, § 148, enlarges those limitations to a great degree, and excludes all rules repugnant to our local and political circumstances.   The historical fact is, that the early colonists of this country were more learned in divinity than in jurisprudence; and Hutchinson, the best colonial historian observes, in his history of Massachusetts, 1399, that its "judicial proceedings were in as summary a way as could well consist with the preservation of any tolerable method or order."   None would contend, at this day, in a trial of a writ, for the extraordinary jury called the grand assize, composed of four knights, "girt with swords," and who chose twelve other persons to be joined with them.   It has been deemed necessary in this State, to secure by enactment, the privilege of a jury *de mediatate linguæ.*   Yet both these juries were known to the original common law.   It will be observed that the modifications in this country of the English forms of legal proceedings have not always been formally made, as by legislation, but have sprung naturally from our circumstances. The old common law has been insensibly changed and tempered to our situation and institutions, and thus practice, custom and usage, which are always as potent as legislation in such cases, have made a common law for the individual states.

Thus, while the constitution must be construed to have adopted the generous privilege of the common law trial by jury in its essential elements, it reasonably follows that whatever was an accidental, and not an absolute part of that institution, the mere superfluous forms and complicated proceedings of the English courts, is not necessarily included to have been guaranteed in the right by the clause of the constitution.   It was, therefore, competent for legislation to point out the mode of empanelling juries, both grand and petit, so long as it did not intermeddle with the constituents of those bodies; and, whenever legislation is silent, we must presume an intention to adopt the forms of the common law, unless they are found to be repugnant to our local or political circumstances, and well established usages.   In this state the mode of empanelling grand juries, differs in many respects from the mode existing at common law.   One of the marked differences is, that at common law, jurors duly served

with process under a *venire facias*, were compellable to appear, and their appearance in the common pleas was enforced by writs of *habeas corpora* and *distringas juratores*, and in the Kings Bench and exchequer, by the writ of *distringas juratores* alone. Bac. Abridg. tit. Juries.   With us, jurors duly served with process under a *venire facias*, and failing to attend, are liable to a fine unless good cause be shown for their non-attendance, on or before the first day of the regular term of the court next after their default, or before a final judgment on *scire facias* issued according to law against them.   H. & H., 492, § 48.   They are not compellable to appear at the return term of the *venire facias*. The statute has affixed the penalty and the whole penalty for such non-attendance.   The *scire facias* against a defaulting juror in this state, corresponds to the *distringas juratorem* of common law, the latter having been returnable immediately, and the former being returnable to a subsequent term of the court.   In this interpretation of the statute the legal maxim that *Expressio unius est exclusio alterius*, applies with much force.   It is a legitimate mode of ascertaining the meaning of a statute to compare it with others of a similar character.   For instance, the statutes of this state respecting the summoning and attendance of witnesses upon trials, resemble the rules governing jurors; they are subject to the same penalty and same process of its recovery.   H. & H., 599, § 2 and 4.   In the case of witnesses, however, there is a special statute authorizing the issuance of a warrant or attachment to compel their attendance, which does not exist in the case of defaulting jurors.   H. & H., 605, § 21.   In further confirmation of this view of the law upon this point, it may be observed that the statute, H. & H., 492, § 49, provides that the grand jury shall be constituted from the whole number of the jurors summoned by the *venire facias*, and attending thereon, which seems plainly to anticipate the contingency of the non-attendance of some of the jurors summoned by the regular *venire facias*.   In reply to that branch of the assignment of error which would appear to hold that, under the circumstances, a special *venire facias* should have been awarded to complete the grand jury, it is enough to observe that the statute providing for such an order, (H. & H.,

499, § 68), authorized it only when not any of the regular jurors summoned to a particular term shall be in attendance. This is but a re-enactment of the common law, as will be hereafter seen.

Then, there existing no means of enforcing the appearance of the defaulting jurors of the regular *venire facias*, and it not having been a case for the award of a special *venire facias*, what was the proper course to be adopted to complete the number of jurors necessary for a legal grand jury? Our statutes, although they do not expressly point out the mode, point it out by inference, by acknowledging the legal existence of tales grand jurors. H. & H., 499, § 70. At common law, if a jury did not attend on the *habeas corpora* or *distringas juratores*, which were to bring them into court, there was a writ of *undecim, decim,* or *octo tales,* according to the number deficient, to force others into court; and also subsequently, 35 H., viii, 6, the court could cause a supply to be made of so many men as were wanting, of them as were standing about the court," and hence the act itself was styled a *tales de circumstantibus.* The *tales de circumstantibus* was given by statute to trials by assize and *nisi prius.* In this state the *tales* and the *tales de circumstantibus* have been indifferently used by custom of the courts.

It occurs here to notice the objection, that the two persons, by-standers, do not appear to have been competent jurors, although this objection is likewise involved in the difficulty of having been taken too late in point of time, as before sustained by authority, it is not well made in point of fact. The two persons were summoned from the by-standers to sit upon the grand jury. The circumstances show that they were summoned as *tales de circumstantibus.* The word *tales* is similitudinary, and has reference to the resemblance, which there ought to be *in esse.* Thus, at common law, if the array were quashed, or all the polls challenged, or absent, a new *venire facias* was awarded, and not a *tales,* because there were no *quales.* The mode of proceeding shows, therefore, that the persons summoned were "such as those" of the jury already empanelled, and who, nothing to the contrary appearing, must be considered to have been good and lawful men, and invested with all the necessary qualifications.

Upon the examination of the second assignment of error, some remarks are equally applicable to the one just considered. The second ground claimed as error is, that the circuit court erred in refusing to allow the prisoner to challenge peremptorily a greater number than twelve of the jurors tendered to him by the state for his trial.

Our statute (H. & H., 674, § 46) limits the number of peremptory challenges in capital cases to twelve. At common law, in capital cases, the prisoner could challenge thirty-five peremptorily. By statute 38, H. VIII., c. 3, peremptory challenges were reduced to twenty, but by 1 & 2, W. & M., c. 10, the challenge of thirty-five in treason and petit treason was restored. In this state, formerly, by act June 11th, 1822, peremptory challenges were allowed to the number of twenty. The origin of peremptory challenges shows that the reason for the common law rule has ceased at this day. The trial by the petit jury was introduced to do away with the trial by ordeal; the jury of twelve being after the manner of the canonical purgation of accusation. Among the canonists, the whole *pares* were not upon the jury, but only a select number was brought in and chosen by the accused himself. A middle way was therefore adopted, and the accused had liberty to challenge peremptorily any number under three juries; four juries being as many as generally appeared to make the total *pares* of the county. Gilbert's Com. Pleas, 99; Bacon's Abridg. Title Juries, E. It might be extremely inconvenient, and indeed, in some instances work a complete denial of public justice, under our local circumstances, of a sparse population, to adhere implicitly to this feature of the common law. The trial by jury is by twelve free and lawful men, who are not of kin to either party, for the purpose of establishing, by their verdict, the truth of the matter, which is in issue between the parties. It is called a trial by one's peers; that is, by men who have that concern for the party on trial, which naturally flows from a parity of circumstances, common to him and his judges. 3, Black. Com., 361. The jurors should be as impartial and independent as the lot of humanity will admit, and be allowed to judge upon the matter submitted to them freely and without fear or favor.

Such is the trial by jury, guaranteed by the Constitution, and originally secured by the *Magna Charta* of England. Any legislation, therefore, which merely points out the mode of arriving at this object, but does not rob it of any of its essential ingredients, cannot be considered an infringement of the right.

The third point relied upon as error is, that a witness, on the part of the state, was permitted to testify as to the general habit of the prisoner, in his capacity of overseer, in punishing slaves upon the plantation of the owner of the slave charged to have been killed.

It is not necessary to prove strictly, as laid in the indictment, the instrument or means by which the crime of murder has been committed; for if it be proved to have been effected by any other instrument, capable of producing the same kind of death, it will be sufficient. But the mode in which the death is alleged to have been effected, must be proved to a reasonable degree of certainty. In this case the answer of the witness was a response to the allegation in the indictment, of the instrument used to inflict the wounds, but was general in its character, and had no other than a general reference to the individual slave charged to have been killed. It cannot, therefore, be viewed as evidence in this case of killing, even though we supply the fact that this slave was upon the plantation. The primary rule in relation to evidence is, that the evidence must correspond with the allegations, and be confined to the point in issue. A principal reason for this rule is, that a party, having had no notice of such a course of evidence, may not have prepared himself to rebut it. It is not an answer to this to say, that the matter in evidence having no relation to the point in issue, cannot therefore influence the mind upon it. It may have the effect to withdraw the minds of the jury from the point in issue and thus mislead them. If the admitted evidence tend to prove that the prisoner has committed another distinct offense, it may thus excite prejudice, and even raise the inference of the commission of the offense alone in question. It is of the last importance to a person charged with an offense, that the facts laid before the jury should consist exclusively of the transaction, not only because he cannot be expected to come prepared to answer them

alone, but because, even should he happen to be so prepared, it is so much irrelevant matter tending to confuse the minds of the jury, and to take from him the benefit of their exclusive consideration of the merits of the matter solely in issue. The customary manner of the prisoner's punishing slaves upon the plantation under his control, was not the point in issue, nor a collateral fact of that point, nor did it constitute any part of the transaction to which that point related. The prisoner was not necessarily prepared to prove his customary mode of punishing slaves. Such a matter involved an inquiry into circumstances that might draw away the minds of the jurors from the true merits of the investigation submitted to them. It might have tended to prove that the prisoner had committed the offense of cruel and unusual punishment upon a slave, which is a misdemeanor under our statutes, and thus have excited an improper prejudice against him in the minds of his jury. There was error, therefore, in permitting the question complained of to be asked and answered by the witness.

With the foregoing view of this case, its remaining points relied upon by counsel need not be reviewed.

The judgment of the court below is therefore reversed, and a new trial awarded.

SHARKEY, C. J.:

One of the objections raised in this case is, that the grand jury was illegally organized. It seems that after the *venire* was called, only ten of the jurors, who had been summoned, appeared, whereupon the court ordered the sheriff to summon two by-standers to serve on the jury, who were accordingly sworn. The regularity of this proceeding seems to me to depend entirely upon the sixty-eighth section of the circuit court law, which is in this language: " If at any regular or special term of any court in this state, there shall not be in attendance any of the regular jurors summoned to such term, it shall be the duty of the court to award forthwith a special *venire facias*, directing the proper officer to summon without delay, persons, freeholders or householders of the county in which the court shall be sitting, to serve as jurors at such term of the court," etc. Now the question is, does this section authorize the court to exercise this power

only when all the grand jurors fail to attend, or is the special *venire facias* to issue to bring in a less number than a full panel? I think the statute is not to be read as providing only for the non-attendance of the whole panel, but if any part fail to attend, then a *venire* shall issue to make up the requisite number. The sense of the statute is made apparent by reading it thus: "If there shall not be in attendance any one or more of the regular jurors," etc., or "any number of the jurors," then it shall be the duty of the court to issue a special *venire*. The word "any" means every, either, whosoever. By giving to it either of the latter significations, my construction is sustained, and the statute leaves no contingency unprovided for. It would seem singular, indeed, that the legislature should have intended to authorize the court to issue a special *venire* only in the event of the non-attendance of the whole jury, a contingency that is least likely to occur, and that they should have overlooked the difficulty, which is most probable, and which must, in the nature of things, often occur, by the non-attendance of part of the jury. Thinking, then, that the statute provides for supplying the deficiency, in case any one or more of the jurors should fail to attend, the question is narrowed down to this: may the court disregard the mode prescribed by the statute, by pursuing a different method? I think not. The statute must be followed. As well might the court dispense with the *venire facias* entirely, and summon the whole of the grand jury from the by-standers. It is not for the court to say, that the provision of the law is useless, or that its object may be accomplished without process, when process is required. The law requires, that the special *venire facias* shall direct the sheriff to summon freeholders or householders of the county, but under a mere order, verbally given, the defendant has no security that competent persons will be summoned. It is safe to follow the law, but dangerous to depart from it. If my construction of the statute be the true one, then the indictment was bad, and the judgment ought to have been arrested.

I concur with the majority of the court in holding that improper evidence was permitted to go to the jury. The testimony which tended to show the defendant's treatment of other slaves should have been excluded.