## JOHN NELSON v. THE STATE OF MISSISSIPPI.

1. PERJURY—IMMATERIALITY OF THE FALSE STATEMENT.—Perjury cannot be predicated of immaterial statements made by defendant as a witness.

2. CRIMINAL PROCEDURE.—There is no such thing known to criminal practice as a demurrer to evidence. There are only two modes of conviction for crime, viz.: by pleading guilty, and being found so by the verdict of a jury.

3. TRIAL BY JURY.—General maxims and principles of trial by jury stated and discussed.

4. CASE AT BAR.—It is error to allow the jury, in a case of felony, to disperse, or to discharge them without cause; and it is also error for the court, in such case, to pronounce the verdict.

ERROR to the circuit court of Lee county. BOONE, J.

The opinion of the court contains a sufficient statement of the case.

*Clayton & Clayton,* for plaintiff in error.

The indictment should have been quashed. The omission in an indictment for a felony of the word

"feloniously" is a fatal defect. Fowler v. the State, 41 Miss. 570. There are no proper averments to falsify the matter wherein perjury is assigned, as required by the Rev. Code of 1857, p. 607, art. 211, under which the indictment was found. Archb. Cr. Pl. and Ev. (10 Lond. ed.) 571; 2 Bish. Cr. Pr. 922, 923.

The demurrer to the evidence should have been sustained. Rosc. Cr. Ev. 747, 749; 2 Bish. Cr. Pr. 984–990, note 8; ib. 935; McQuillen v. the State, 8 S. & M. 487; Wilson v. the State, 42 Miss. 639.

*J. S. Morris*, attorney-general.

TARBELL, J. :

The plaintiff in error was indicted by the grand jury of Lee county, at the October term, 1871, of the circuit court of that county, on a charge of perjury. There was a motion to quash the indictment, because the offense was not alleged to have been "feloniously" committed, and for the want of proper averments to falsify the matters whereof the perjury is assigned. This motion was overruled, and the defendant pleaded not guilty. The testimony on the trial disclosed that the perjury charged was committed, if at all, in a cause pending in the circuit court of Lee county, wherein the state was plaintiff, and Emma Hussey and said John Nelson were defendants, charged in an indictment by the grand jury of said Lee county, with "unlawful cohabitation." The said Emma Hussey was on trial, and said John Nelson was sworn as a witness. The particular evidence alleged to have been false, consisted in the statement, that the said Emma was in the employ of him, the said Nelson, in the years 1868, 1869, 1870, and 1871, under written contracts, made on the first day of January in each of those years, but that the contracts for the years 1868, 1869 and 1870 were lost. One witness testified in the case at bar to contradictory

statements of Nelson, and admissions out of court, and not under oath, that he had no contract with said Emma. Another witness testified to writing the contract of hiring for 1871 between said Emma and said Nelson, which contract he wrote in April, dating it January 1, 1871, by request of Nelson.

Upon the conclusion of the evidence for the state, the defendant interposed a formal demurrer to the evidence, stating as grounds therefor, that there was but one witness to the falsity of the testimony, for which the attempt was being made to convict him of perjury ; that the indictment in the case at bar charges the perjury to have been committed in a case in which Emma Nelson, whereas the proof is, the evidence was given in a cause wherein Emma Hussey was defendant ; that the evidence of Nelson on the trial of Emma Hussey, as to the contract of hiring, was excluded from the jury ; and that, as to the second count of the indictment in the case at bar, there was no evidence falsifying the statements of Nelson on the trial, except his contradictory declarations out of court, and not under oath.

The district attorney, the record states, joined in this demurrer. Pending the consideration of this proceeding, there was a motion in arrest of judgment, on the following grounds :

1. That the evidence failed to establish the guilt of the accused.

2. For the causes set forth in the motion to quash the indictment.

3. Because the accused can only be tried by a jury of his peers, and he has no power to consent to be tried in any other manner ; and

4. It is insisted that a demurrer to evidence in a criminal cause is inadmissible, and contrary to law.

The record does not show any disposition of this motion ; but in a subsequent entry it is recited, that " the cause came on to be further heard on the demurrer of the

defendant to the evidence, and after the argument closed, said demurrer was by the court overruled; and thereupon, the defendant being in open court, it is considered and adjudged by the court, that the defendant be confined in the state penitentiary for the term of two years, commencing on the 18th day of May, 1872. Thereupon, the defendant prayed an appeal to this court, which was granted. Error is predicated of the action of the court below in overruling the motion to quash the indictment; in overruling the demurrer to the evidence; and in overruling the motion in arrest of judgment.

To the result reached in the court below, the record presents several fatal objections.

1. Upon the trial of the indictment for "unlawful cohabitation," we are unable to perceive the materiality of the contracts for hire between the accused parties. They were very properly excluded from the consideration of the jury, and thus placed entirely out of the case, and beyond the reach of a criminal prosecution based on the falsity of the testimony in regard to their existence. If executed, and they existed in the most perfect good faith as contracts for labor, they would not palliate, justify, or excuse unlawful cohabitation, nor could they have any legal bearing upon that question. If the testimony with reference to these contracts was immaterial to the issue in that trial, then perjury cannot be predicated upon its falsity.

2. The question presented by the demurrer to the evidence is more novel and difficult, and more interesting to a legal antiquarian than one of practical importance, for the reason that a demurrer to evidence has no legal status in criminal practice. A demurrer to pleadings in criminal proceedings is a well regulated practice, but we have searched the text-books and the reports in vain for an instance of demurrer to evidence in a criminal trial. And not only is the practice without precedent,

but it appears to be inconsistent with long established rules of criminal procedure. The demurrer to evidence takes the case from the jury, and results in their dispersion, which, in cases of felony, is illegal, even with the consent of the accused. It waives a trial by jury in a criminal prosecution for felony, which is contrary to the whole course of the common law from its earliest history, with some exceptions. 4 Black. Com. ch. 27. From an early period in England, upon overruling a demurrer to an indictment in cases of misdemeanor, the rule has been, as here, to enter a judgment final against the accused, with a discretion in the court to permit him to plead over; while in felony, the practice has not been uniform, but now, in all cases, he is allowed to plead. Ib. According to the same author, Book 4, p. 362, "conviction" for crime can occur only in two ways: either by confessing the offense and pleading guilty, or by being found so by the verdict of a jury. In Coke upon Littleton, 227 *b*, after referring to the discharge of the jury in civil causes, it is said: "A jury sworn and charged in case of life, a member cannot be discharged by the court or any other, but they ought to give a verdict." This is undoubtedly the general rule, and they can be discharged only for good cause; but in such case they cannot legally disperse, even with the consent of the accused. After enumerating the qualifications of jurors (Co. Litt. sec. 234, 155 *b*), it is added: "The most usual trial of matters of fact is by twelve such men; for, *ad questionem facti non respondent judices,* and matters in law, the judges ought to decide and discuss: for *ad questionem juris non respondent juratores.*" And, in a note to this text, as to the respective provinces of judge and jury, the one directing the law, and the other finding the facts, the learned author of the note alludes to the practice of a demurrer to evidence in civil cases, by which the case is taken from the jury, when the latter "is either discharged, or at the most only ascertains

the damages;" and there is found in this note a reason why this practice does not apply to criminal proceedings, in the fact that in the latter, in case of acquittal, a new trial cannot be granted.  Speaking more specifically of demurrers to evidence, Co. Litt. §§ 96, 72 *a*, states this early English practice:  " But if evidence for the king, in an information or any other suit, be given, and the defendant offer to demurre in law upon the evidence, the king's counsel shall not be inforced to joyne in demurrer ; but in that case, the court may direct the jury to find the special matter."

Of trial by jury, Blackstone says it is called also, " the trial *per pais*, or by the country ; a trial that hath been used time out of mind " in that country, " and seems to have been coeval with the first civil government " thereof.  " Its establishment, however, and use," this author says, " of whatever date soever it be, though for a time greatly impaired and shaken by the introduction of the Norman trial by battle, was· always so highly ·esteemed and valued by the people, that no conquest, no change of government, could ever prevail to abolish it.  In *magna carta* it is more than once insisted on as the principle bulwark of our liberties ; but especially is it provided, " that no freeman shall be hurt in either his person or property ; *nisi per legale judicium parium snorem vel per ligem terræ ;* " (unless by the lawful judgment of his peers, or equals, or by the law of the land.)  " A privilege which is couched in almost the same words with that of the Emperor Conrad, two hundred years before : *nemo beneficium suum perdat, nisi secundem consuetudinem antecessorum nostrorum et per judicium parium suorum ;* " (that no man lose his *benefice*, unless according to the custom of our ancestors ; and by the judgment of his peers.)  3 Black. Com. ch. 23. These maxims in spirit, and almost in letter, have been incorporated in our American constitutions, in-

cluding that of Mississippi, and with them we have adopted the rules which explain and enforce them.

In Blackstone (Book 3, p. 372), we are told, that a demurrer to evidence, "draws the question of law from the cognizance of the jury, to be decided (as it ought) by the court." Attaints began to be disused and new trials introduced, as concurrent reforms. Ib. p. 375. Prior to the charge of the judge, the jury could separate in civil cases; but not in criminal trials for felony. Ib. 2 Barn. & Ald. 462. If a party arraigned on a criminal charge stand mute, the court shall cause the plea of not guilty to be entered, when the trial shall proceed. Bl. Com., Book 4, p. 324; and ib. p. 341, note 14; Code of 1871, § 2757. A demurrer to evidence is not recognized by Blackstone as a part of criminal procedure. The following are given by him as the pleas of the prisoner, in the order named, viz.:

" 1. A plea to the jurisdiction; 2. A demurrer; 3. A plea in abatement; 4. A special plea in bar; or, 5. The general issue." Book 4, ch. 26. "Although in civil actions, when a man has his election what plea in bar to make, he is concluded by that plea, and cannot resort to another, if that be determined against him; yet, in criminal prosecutions, when a prisoner's plea in bar is found against him, upon issue tried by a jury, or adjudged against him in point of law by the court, still he shall not be concluded or convicted thereon, but shall have judgment of *respondeat ouster*, and may plead over to the felony, the general issue, not guilty. For the law allows many pleas by which a prisoner may escape death, but only one plea in consequence whereof it can be inflicted, viz., on the general issue, after an impartial examination and decision of the fact, by the unanimous verdict of a jury " (ib., p. 338, note 11), which confines this rule to cases of felony. See, also, ib., p. 335, note 8. " It remains, therefore, that I consider," says this author, " V. The general issue, or plea of not guilty, upon which

plea alone the prisoner can receive his final judgment of death." Again, he says: "But upon indictments, since the abolition of ordeal, there can be no other trial but by jury, *per pais*, or by the country." And a statute, since the time of Blackstone, enacts that, in cases of felony and misdemeanor, if the prisoner refuses to plead, the court shall direct the entry of not guilty, with the same effect as if such person had actually pleaded the same. "The trial by jury, on the contrary, *per patriam*, is also that trial by the peers of every Englishman, which, as the grand bulwark of his liberties, is secured to him by the great charter. *Nullus liber homo capiatur, vel imprisonetur, aut exelet, aut aliquo, alio modo destruatar, nisi per legale judicium parium suorem, vel per legem terræ.* (That no freeman be taken, or imprisoned, or exiled, or in any other manner destroyed, unless by the lawful judgment of his peers or by the law of the land.) The antiquity or excellence of this trial, for the settling of civil property, has before been explained at large. And it will hold much stronger in criminal cases, since, in times of difficulty and danger, more is to be apprehended from the violence and partiality of judges appointed by the crown, in suits between the king and the subject, than in disputes between one individual and another, to settle the metes and bounds of private property. Our law has, therefore, wisely placed this strong and two-fold barrier, of a presentment and a trial by jury, between the liberties of the people and the prerogative of the crown. It was necessary for preserving the admirable balance of our constitution, to vest the executive power of the laws in the prince; and yet this power might be dangerous and destructive to that very constitution, if exerted without check or control by justices of oyer and terminer, occasionally named by the crown, who might there, as in France or Turkey, imprison, dispatch or exile any man that was obnoxious to the government, by an instant declaration

that such is their will and pleasure. But the founders of the English law have, with excellent forecast, contrived that no man should be called to answer to the king for any capital crime, unless upon the preparatory accusation of twelve or more of his fellow-subjects, the grand jury; and that the truth of every accusation, whether preferred in the shape of an indictment, information or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors, indifferently chosen and superior to all suspicion." Ib. p. 342. "When the evidence on both sides is closed, and indeed, when any evidence hath been given, the jury cannot be discharged till they have given in their verdict." Ib. p. 361. "The verdict is general, guilty or not guilty; or special, setting forth the facts, and praying the judgment of the court, whether, for instance, in the facts stated, it be murder, manslaughter, or no crime at all." Ib. Of this practice, the author says : " Sir Matthew Hale well observes, it would be a most unhappy case for the judge himself, if the prisoner's fate depended upon his directions; unhappy also for the prisoner; for, if the judge's opinion must rule the verdict, the trial by jury would be useless. Yet, in many instances, when, contrary to the evidence, the jury found the prisoner guilty, their verdict hath been mercifully set aside, and a new trial granted. But there hath yet been no instance of granting a new trial when the prisoner was acquitted upon the first. If the jury, therefore, find the prisoner not guilty, he is then for ever quit and discharged of the accusation. But, if the jury find him guilty, he is then said to be convicted; which conviction may accrue two ways; either by his confessing the offense and pleading guilty; or by his being found so by the verdict of his country." Ib. p. 362.

Thus, according to the best recognized authorities, authors who wrote when the fountain of our jurispru-

dence was taking form and vitality, and when it was at its meridian, we have seen that a demurrer to evidence was unknown to criminal proceedings at the common law; and that punishment in the higher grades of crime could only follow conviction, which must be by the verdict of the jury, or by confession in open court, with the exception in the English practice herein referred to. Later authorities are to the same effect. Story on Const.; Sedg. on Stat. and Const. Law; Am. Cr. Law; Bish. Cr. Law; Chitty Cr. Law, title, jury.

In Virginia (1 Gratt. 557), and in Alabama (26 Ala. 127), the doctrines herein indicated are distinctly declared, yet they hold that a demurrer to evidence in a criminal prosecution, resulting in taking the case from the jury and their discharge, is allowable by mutual consent. Such a rule is regarded as in conflict with the adjudications in this state on several grounds.

The constitution of the United States, art. III, sec. 2, provides, that "the trial of all crimes　*　*　*　shall be by jury. Art. V, of the amendments, declares that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury;　*　*　*　nor shall any person be subject, for the same offense, to be twice put in jeopardy of life or limb; nor be deprived of life, liberty, or property, without due process of law." Art. VI, of the amendments, provides, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury　*　*　*　and to be informed of the nature and cause of the accusation."

Referring to the foregoing clauses in the Federal constitution, Story, in his Commentaries thereon, § 1783, says, of the guaranty of a trial by jury, that it is "but an enlargement of the language of Magna Charta, ('*nec super cum ibimus, nec super cum mittimus, nisi per legale judicium parium suorem, vel per legem terræ*'); neither will

we pass upon him or condemn him, but by the lawful judgment of his peers, or by the law of the land." Lord Coke says, that these latter words, *per legem terræ,* by the law of the land, mean by due process of law; that is, without due presentment or indictment, and being brought in to answer thereto by due process of the common law. So that this clause in the constitution of the United States, says Story, " in effect affirms the right of trial according to the process and proceeding of the common law."

Punishment must be based upon conviction, which implies, in the higher grades of crime, the verdict of a jury or confession in open court. Tomlin's Law Dict. and authorities there cited.

What we desire to express of the case at bar, in accordance with the course of the decisions of the courts of this state, pursuing the doctrines of the common law, is, that upon the demurrer to evidence, there were two fatal errors: 1. In permitting the jury to disperse in a case of felony, or in discharging them without just cause. 1 Archb. Cr. Pr. (7th ed.) 593, *et seq.;* and 2. A verdict by the court, the judge thus usurping the exclusive right of a jury in this grade of crime. It is true that, in England at one time, in specified felonies, certain pleas were held to be confessions, whereon judgment was pronounced. 2 Hale P. C. 255–258. But this somewhat uncertain practice has since been regulated by statute, and has no application here, as we have endeavored to show. And, besides, it is not the purpose of this opinion to point out and explain the exceptions and deviations of the English practice produced by the political convulsions of that country, but to announce the true doctrines of the common law, so far only as applicable to the case at bar, viz.: 1. That a demurrer to evidence is not recognized, at least in felonies, as having a place in criminal jurisprudence; and, 2. That, in these grades of crime, punishment can

only lawfully follow the verdict of a jury or confession in open court. *Vide,* also, 4 How. (Miss.) 163; ib. 187; 5 S. & M. 664; 46 Miss. 683; 42 ib. 639; 8 S. & M. 587; Woods v. the State, 43 Miss. 364.

The object to be attained by a demurrer to evidence might be reached by motion at the conclusion of the evidence for the prosecution. If clearly a case is not and can not be made out, a discharge of the accused, if desired by him, is authorized by section 2872 of the Code, the judge and the district attorney being satisfied of the propriety of so doing. But, if demanded, the accused has a right to a verdict, an acquittal in a proper case being readily secured by the prosecuting attorney, with the assent and under the instructions of the court. So that thus the benefits of the practice attempted in this cause can be secured without such a clear violation of rules, regarded as long and sacredly settled, essential to purity in the administration of justice and to the rights of citizens. In this view, the sentiments of Blackstone are precious to Americans; their ennobling influences justifying the copious extracts we have made, and more than repaying frequent repetition.

*Judgment reversed and cause remanded.*